**IN THE COURT OF APPEALS OF IOWA**

No. 20-1067
Filed November 4, 2020

**IN THE INTEREST OF C.F.,**
**Minor Child,**

**J.N., Mother,**
     Appellant,

**S.F., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.

A mother and father separately appeal the termination of their respective

parental rights. **AFFIRMED ON BOTH APPEALS.**

Stephen K. Allison of Stephen Allison Law, PLLC, Des Moines, for appellant

mother.

Jessica J. Chandler of Chandler Law Office, Windsor Heights, for appellant

father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor child.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

A mother and father separately appeal the termination of their respective parental rights to their child, C.F., who was four years old at the time of the termination hearing. Clear and convincing evidence establishes (1) grounds for termination, (2) termination is in C.F.'s best interest, and (3) the father should not be given additional time to work toward reunification. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of parents' rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

Both parents claim the State failed to satisfy the statutory grounds authorizing termination. The juvenile court found grounds authorizing termination under Iowa Code section 232.116(1)(f) (2020). Paragraph (f) authorizes termination when:

> (1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(f). Both parents limit their challenges to the fourth element, whether C.F. could be returned to their respective homes.[1] The fourth element is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020). We address each parents' claim in turn.

With respect to the mother, we find C.F. could not be returned to her care at the time of the termination hearing. The mother has a history of substance abuse, including cocaine, opiates, and marijuana use. She tested positive for cocaine and THC in October 2019. And since her positive October 2019 test, the mother has not participated in drug testing when requested. "We presume these missed drug tests would have resulted in positive tests." *In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020); *accord In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been

---

[1] The parents do not live together. The mother lives in Iowa, and the father lives in Texas.

positive for illegal substances."). And at the termination hearing, the mother conceded her substance abuse prevented her from being able to adequately care for both herself and C.F.[2] We agree and conclude the mother's drug use prevented reunification. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of substance abuse).

In addition, we question whether the mother's lifestyle is steady enough to meet the heavy demands of parenting. The mother often missed visitations because of her unpredictable work schedule. And she testified she doesn't know if and when she will work each day until 8:00 a.m. She sometimes has as little as two hours' notice of a job.

So we question how she would secure childcare on such short notice. Certainly, many parents have employment with unpredictable work hours, and we do not suggest this alone prevents reunification. But when asked about daycare options, the mother stated that her grandmother knew more about daycare options than she does. And the mother just assumed she could take C.F. to a daycare she used prior to removal—which was nearly three years before the termination hearing. When asked about her support system, the mother identified C.F. as her top supporter. She then referenced her grandmother, stated she has cousins, and noted the father serves as a support. But the father lives out of state, and the mother did not provide additional detail on whether her grandmother and cousins

---

[2] The mother later backpedaled from this admission, but we believe her first assessment of her ability to care for herself and C.F. to be the most organic and honest.

could consistently provide childcare when needed.  This all suggests the mother does not have specific plans on how to safely care for C.F.  *Cf. Z.P.*, 948 N.W.2d at 524–25 (concluding a child could not be returned to a father when he did not have a practical plan established to care for the child, including when he worked long hours).

Also, the mother's criminal activity raises questions as to whether she would be around to parent C.F.  The mother was most recently jailed in March for violating probation.  In April, she pled guilty to assault on a peace officer, operating while intoxicated, and malicious prosecution.  She was sentenced to a three-year suspended sentence and placed on probation for two years.  Based on the mother's criminal history, we are not satisfied she will not be incarcerated again in the foreseeable future.

The mother suggests she did not make more progress because the Iowa Department of Human Services (DHS) failed to make reasonable efforts toward reunification.  Specifically, she argues she was entitled to additional services at the beginning of the case because she was a minor when the juvenile court adjudicated C.F. as a child in need of assistance.

Certainly, as part of its ultimate proof, the State must establish it made reasonable efforts to return C.F. to his home.  *See* Iowa Code § 232.102(7) (providing DHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child").  But parents must raise their complaints regarding reasonable efforts prior to the termination hearing.  *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of

services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal). And we can find no instance in which the mother requested additional services because she was a minor at the beginning of the case. So the mother did not preserve any reasonable-efforts challenge.[3]

In light of the mother's criminal history, lack of a practical parenting plan, and her unresolved substance abuse, we conclude C.F could not be safely returned to her care at the time of the termination hearing.[4]

We reach the same conclusion as to the father. It does not appear he has a meaningful relationship with C.F. He was largely uninvolved over the life of this case and remains out of state. The father admitted, "I haven't been doing my part

---

[3] We also note the mother's petition on appeal is silent as to what additional services should have been provided.

[4] We note the mother's petition on appeal suggests her progress toward reunification was hampered by the necessary modifications to services resulting from the COVID-19 pandemic. But this case began in May 2018—almost two years before COVID-19 impacted services. And "[t]his is not a parent whose hard work placed her on the threshold of reunification only to be thwarted by a once-in-a-lifetime event. This is a parent who was given ample time to gain the skills necessary for reunification but simply failed to progress, pandemic or no pandemic." *See In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020). So the impact of COVID-19 on services does not impact our confidence that the child could not return to the mother's care.

as far as being a father to [C.F.] in this case." We agree with his assessment. And we conclude C.F. could not be safely returned to the father at the time of the termination hearing.

We conclude the State established a statutory ground for termination with respect to both parents.

Our next step centers on C.F.'s best interest. *See* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

The mother does not challenge the best-interest determination. So we do not address the issue with respect to her. And the father only briefly references the best-interest issue through a case citation. So the issue is not sufficiently developed for our review. *See In re K.M.*, No. 19-1637, 2020 WL 110408, at *3 n.6 (Iowa Ct. App. Jan. 9, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019). If it were, we would find termination to be in C.F.'s best interest. He has virtually no relationship with the father. But C.F. is doing well in his current foster home. And he has historically had difficulty transitioning to new homes. So placing him in a new home with his father would be adverse to C.F.'s best interest.

Next, we consider whether to apply a section 232.116(3) exception to termination.  Section 232.116(3) exceptions are permissive, not mandatory.  *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).  And the burden of establishing a section 232.116(3) exception rests with the parent.  *See A.S.*, 906 N.W.2d at 476.  Neither parent specifically argues a section 232.116(3) should apply to prevent termination.[5]  So we do not apply an exception.

Finally, we address the father's contention that he should be given additional time to complete an Interstate Compact on the Placement of Children (ICPC) study.  The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  We agree with the juvenile court that the father should not be given additional time.  The father has had *years* to complete an ICPC study.  Workers in Iowa and Texas tried to facilitate an ICPC study before, and the father dropped the ball when he did not communicate with workers.  We have no reason to believe anything would be different another time around.  We refuse to leave C.F. in limbo any longer.

We affirm the juvenile court as to both parents.

**AFFIRMED ON BOTH APPEALS.**

---

[5] The father does take issue with the juvenile court's finding that there is no bond between himself and C.F.  The strength of the parent-child bond can serve as a basis to preclude termination under section 232.116(3)(c).  But the father does not argue his bond with C.F. is strong enough to preclude termination.